IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| NORMA MONTALVO, ET AL., | § | |
|     *PLAINTIFFS,* | § | |
| | § | |
| VS. | § | CIVIL CASE NO. 7:23-CV-00342 |
| | § | |
| AUTOZONE PARTS, INC., ET AL., | § | |
|     *DEFENDANTS.* | § | |

**PLAINTIFFS' OPPOSED MOTION FOR LEAVE TO AMEND AND OPPOSED MOTION TO REMAND**

To the Honorable Judge of the Court:

Norma Montalvo and Maria Garcia, the named plaintiffs in the above-entitled and numbered cause, file this Opposed Motion for Leave to Amend and Opposed Motion to Remand, asking the Court to remand this case for further handling to the 229th District Court of Starr County, Texas because Mr. Lucio's death does not necessarily destroy diversity of the parties. Plaintiffs would show this Honorable Court as follows in support:

## I.
### Relief Requested

1.  Plaintiffs request that the Court find that there was not a fraudulent or improper joinder of any party for the purpose of defeating diversity jurisdiction in this case; rather, a proper defendant passed away unbeknownst to the plaintiffs prior to suit being filed. Plaintiffs would show the Court that it is well settled law, even in the case law cited by Defendant Autozone, that the proper party to civil litigation when a potential plaintiff or defendant in that action dies is the representative of the decedent's estate. That being true, Plaintiffs request the Court's leave to file their First Amended Complaint naming the Unnamed Representative of the Estate of Edgar Lucio as a defendant in this action, only until such time as the statutory Probate Court of Hidalgo County formally appoints a dependent administrator for said estate, and he/she can be named as the defendant/litigant for the estate.

## II.
### Factual Background

2.  The plaintiffs, Norma Montalvo and Maria Garcia, are residents of Starr County, Texas. Currently the named defendants are, Edgar Lucio and Autozone Parts, Inc. Plaintiffs are both residents of the State of Texas. Autozone Parts, Inc. is a Nevada corporation with its principal place

of business in the State of Tennessee.  Defendant, Edgar Lucio, was a Texas resident domiciled in Hidalgo County, Texas.  As Autozone has made clear in its Brief in Support of Removal, Mr. Lucio passed away in the latter half of 2022.

3. On or about June 8th, 2022, the plaintiffs, Norma Montalvo and Maria Garcia, were rear-ended by Defendant Edgar Lucio in Rio Grande City, Starr County, Texas.  At the time of the wreck, Ms. Montalvo was driving her 2011 Chevrolet Equinox with Ms. Garcia riding in a rear passenger seat. Mr. Lucio was driving a full-size, Chevrolet 2500 delivery van owned by Autozone Parts, Inc.  On information and belief, Plaintiffs assert that Mr. Lucio was employed by Autozone Parts, Inc. and in the course and scope of his employment at the time of the wreck.

4. Plaintiffs filed this lawsuit on or about August 29th, 2023 in District Court in Starr County, Texas, the county where the wreck in question occurred.  The suit named the two defendants, Autozone and Mr. Lucio and requested service and citation on each.  Plaintiffs were not aware at the time of the filing that Mr. Lucio had passed away.  Autozone Parts, Inc. filed its Original Answer in state court on September 25th, 2023.  The next day, with their process server understandably having difficulty locating and serving Mr. Lucio, Plaintiffs filed a Motion for Substituted Service in the State Court.  Also that day, attorneys for Autozone filed a Suggestion of Death in the State Court advising that Mr. Lucio was deceased and attaching a Death Certificate evidencing that Mr. Lucio passed away on September 17th, 2022.  Autozone Parts, Inc., filed its Notice of Removal in the State Court on October 6th, 2023 claiming that Plaintiffs fraudulently joined Mr. Lucio as a defendant for the purpose of defeating diversity.

## III.
## Legal Standard

### a. Removal/Remand/Fraudulent Joinder

5. In general, a defendant may remove a state civil action to federal court so long as the action falls within the original jurisdiction of the federal courts.  28 U.S.C. § 1441 (a).  Federal courts have original jurisdiction over all civil actions where there is diversity of citizenship between/amongst the parties and the sum or value of the case is above $75,000.00, exclusive of interest or costs.  *See id.* at § 1332(a).  The removing party bears the burden of establishing whether federal jurisdiction exists. *Howery v. Allstate Ins. Co.*, 243 F.3d 9123, 916 (5th Cir. 2001).

6. Diversity jurisdiction is defined in terms of the citizenship of the parties to the suit.  Wright and Miller et. Al, Federal Practice and Procedure and Related Matters § 3611 (3d ed.); *see* 28 U.S.C. § 1332(a).  **When the citizenship of a decedent**, infant, or incompetent person is in question for diversity purposes, the citizenship of the decedent, infant or incompetent person controls, not that of their legal representative.  28 U.S.C. § 1332(c)(2)(emphasis added); *Moore v. North Am. Sports, Inc.*, 623 F.3d 1325, 1327 n.2 (11th Cir. 2010); *Gustafson v. Zumbrunnen*, 546 F.3d 398, 400 (7th Cir. 2008). Plaintiffs cannot resist posing the question; if a decedent is as improper a party for purposes of diversity as is argued by Autozone, then why does the statute governing Diversity cases specifically set out how the citizenship of a decedent shall be determined by the courts?

7. When a suit is based on diversity jurisdiction, the parties to the suit must be completely diverse – no plaintiff can be a citizen of the same state as any defendant. *MacGinnitie v. Hobbs Grp.*, 420 F.3d 1234, 1239 (11Cir. 2005); *Safeco Ins. v. City of White House*, 36 F.3d 540, 545 (6th Cir. 1994); *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990).

8. A party may move to remand a removed action to state court. *See* 28 U.S.C. § 1447(c). A court must strictly construe the removal statutes in favor of remand and against removal. *Diaz v. Shappard*, 85 F.3d 1502, 1505 (11th Cir. 1996); *Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996); *see Hunter v. Philip Moris USA*, 582 F3d 1039, 1042 (9th Cir. 2009). Any doubt as to whether removal was proper should be construed against removal. *Diaz v. Shappard*, 85 f.3d at 1505; *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *Brown v. Francis*, 75 F.3d at 865. A district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c); *Groupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571, 124 S. Ct. 1920, 158 L. Ed. 866 (2004).

9. For diversity jurisdiction to exist under 28 U.S.C. § 1332(a)(1), there must be complete diversity of citizenship. 28 U.S.C. § 1332. In determining whether complete diversity exists, a federal court "must disregard nominal or formal parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61, 100 S. Ct. 1779, 64 L. Ed. 2d 425 (1980). To establish that a non-removing defendant is a nominal party, the removing party must show that there is no possibility that the plaintiff would be able to establish a cause of action against the non-removing defendant in state court. *Farias v. Bexas Cty. Bd. Of Trs. For M.H.M.R. Serv.*, 925 F.2d 866, 871 (5th Cir. 1991)(citing *B. Inc. b. Milling Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981).

10. Like the nominal party text, "the improper joinder doctrine constitutes a narrow exception to the rule of complete diversity." *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2005). Under the improper joinder doctrine, a case involving a nondiverse defendant may nevertheless be removed to federal court if it is established that the nondiverse defendant was improperly joined. *See id*. "[T]he purpose underlying the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined. Thus, the focus of the inquiry must be on the joinder, not on the merits of the plaintiff's case." *Id*. "The party seeking removal bears a heavy burden of proving that the joinder of the in-state [defendant] was improper." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004). If the party fails to meet this burden and joinder of the in-state party was proper, removal will be inappropriate, and the federal court will not have subject-matter jurisdiction. *Id*. at 575.

11. To establish improper joinder, the party seeking removal must demonstrate either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state." *Id*. at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646-67 (5th Cir. 2003)). The party alleging improper joinder bears the burden of persuasion and that burden is quite stringent. *Lott v. Dutchmen Mfg., Inc.*, 522 F.Supp. 2d 750, 753 (E.D. Tex. 2006); *see Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000)(the burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one.").

      b.      **Leave to Amend/Addition of Non-diverse unnamed or unserved party**

12.     "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the state court." 28 U.S.C. § 1447(e).  While it was decided prior to the adoption of § 1447(e), the generally controlling 5th Circuit case setting out the considerations of a district court faced with a request to add a nondiverse party is *Hensgens, v. Deere & Co.*, 833 F2d 1179 (5th Cir. 1987).  That case's reasoned and balanced approach to the question faced by this Court bears quotation in full:

> "Because the court's decision will determine the continuance of its jurisdiction, the addition of a nondiverse party must not be permitted without consideration of the original defendant's interest in the choice of forum.  The district court, when faced with an amended pleading naming a new nondiverse defendant in a removed case, should scrutinize that amendment more closely than an ordinary amendment.  Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "should be freely given when justice so requires," and Rule 20 permits joinder of proper parties.  In this situation, justice requires that the district court consider a number of factors to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits.  For example, the court should consider the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities.  The district court, with input from the defendant, should then balance the equities and decide whether amendment should be permitted.  If it permits the amendment of the nondiverse defendant, it then must remand to the state court.  If the amendment is not allowed, the federal court maintains jurisdiction."

*Hensgens*, 833 F.2d at 1182.

13.     In short, the "*Hensgens* factors" require a court considering an amendment such as that proposed by Plaintiffs in this case to consider four discrete questions: 1) is the amendment's purpose is to defeat federal jurisdiction; 2) was the plaintiff diligent in amending the complaint; 3) will the plaintiffs be significantly injured if the amendment is denied; and 4) any other factors bearing on the equities.  *Id.*

   c.  **Relation Back of Amendments Cures Mr. Lucio's Current Lack of Capacity**

Federal Rule of Civil Procedure 15 governs the amendment of pleadings, as well as stating that amended pleadings relate back to the original filing.  Federal Rule of Civil Procedure 15(a)(2).  There is a long history of the operation of this rule in dealing with the substitution of a personal

representative for dependents in both Federal and Texas courts. *Missouri, K. & T.R. Co. v. Wulf*, 226 U.S. 570 (U.S. 1913); *Davis v. Preston*, 118 Tex. 303, 16 S.W.2d 117, 118 (Tex. 1929). In such cases, the issue is usually whether the plaintiff's post-limitations amendment, altering the plaintiff's capacity, can relate back to the plaintiff's pre-limitations pleadings. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845 (Tex. 2005).

## IV.
## Argument & Authority

### a. No Fraudulent/Improper Joinder

14. To prevail in their removal on the theory that Plaintiffs fraudulently/improperly joined Mr. Lucio as a defendant, they must establish either: 1) actual fraud in the pleading of jurisdictional facts, or; 2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state. *Smallwood*, 385 F.3d at 573.

15. Plaintiffs were not aware of Mr. Lucio's unfortunate passing until Autozone filed its Suggestion of Death in the state court on September 26th, 2023. Had they been aware of Mr. Lucio's death prior to Autozone filing the Suggestion of Death, Plaintiffs would have taken the following simple steps prior to filing suit: 1) file for an administration and application for appointment of a dependent administrator with the appropriate court; 2) pursue that matter until the Hidalgo County Probate Court named an administrator; and 3) named the administrator as the defendant in this case, as representative of Mr. Lucio's estate. Plaintiffs did not wait until the eve of the expiration of limitations before filing suit, so taking these steps prior to filing suit would have been simple had they been aware of Lucio's untimely passing.

16. Plaintiffs only point out the simplicity of the remedy for the sake of highlighting to the Court the absurdity of the assertion that Plaintiffs "fraudulently/improperly joined" Mr. Lucio in this suit for purposes of destroying diversity. The truth is that the lack of knowledge of his death has put them in the current litigation posture when knowledge of his death, after clearing a few simple hurdles, would easily have avoided it. Plaintiffs named Mr. Lucio as a defendant in this matter for one simple reason: he drove a large van into the back of their SUV at high-speed, causing injuries. There is no intentional fraud in Plaintiffs' pleadings. Any suggestion to the contrary is misguided. This should dispense with the first prong of the fraudulent joinder inquiry.

17. The second potential prong of the fraudulent/improper joinder test is whether Plaintiffs are unable to establish a cause of action against Mr. Lucio. *Smallwood*, 385 F.3d at 573. This point is more nuanced. In this case, whether he be dead or alive, party or not, Plaintiffs must establish that Mr. Lucio was negligent in the operation of the motor vehicle he was driving on the day of the collision if it is to prevail in its Respondeat Superior cause of action against Autozone. *Werner Enters. v. Blake*, 2021 Tex. App. LEXIS 5964, 2021 WL 3164005 (Tex. App. – Houston [14th Dist.], July 27, 2021). What is more, Plaintiffs' causes of action is essentially established as a matter of fact by the police report and video footage that clearly show Mr. Lucio rear ended the plaintiffs' vehicle at the time of the collision. Given these facts, Plaintiffs would urge the Court to find that no fraudulent joinder has

taken place. In so doing, Plaintiffs would reiterate the heavy burden born by those who would cry, fraudulent joinder.

18.     To reiterate: 1) Plaintiffs were not aware of Mr. Lucio's death at the time they filed their Original Petition in State Court, so any allegation that there was actual fraud in those pleadings must fail; 2) Plaintiffs are fully confident in their ability to establish a cause of action for negligence against Mr. Lucio at any trial on the merits of this cause, and are in the process of having a legal representative with the capacity to litigate on the estate's behalf appointed.

### b.      Motion for Leave to Amend to Include Representative of Estate of Edgar Lucio

19.     A court considering an amendment such as that proposed by Plaintiffs in this case to consider whether: 1) the amendment's purpose is to defeat federal jurisdiction; 2) the plaintiff was diligent in amending the complaint; 3) the plaintiff will be significantly injured if the amendment is denied, and; 4) there is a fundamental equity that mitigates in favor of the requested Amendment and Removal. *Hensgens, v. Deere & Co.*, 833 F2d 1179, 1182 (5th Cir. 1987).

*1) is the amendment's purpose to defeat federal jurisdiction?*

20.     The amendment that Plaintiffs seek leave of this Court to make aims to bring in to this suit the proper legal representative of the estate of the person who actually caused them physical harm. This is not a ploy to defeat jurisdiction. It is the action Plaintiffs would have taken had they been aware at the time of filing that Mr. Lucio was deceased. It is, as is set out in the case law brought before this Court in its Brief in Support of Notice of Removal by Autozone, the appropriate way to seek judgment against one who has committed an actionable wrong and since passed away. *Adamson v. Blackmar*, 546 S.W.2d 698 at 702 (Tex. App. – Austin 1977, no writ).

21.     The case law Autozone cites in its Brief in Support of Notice of Removal, *Adamson v. Blackmar*, sets out that the proper party defendant when seeking judgment against the estate of a decedent is the administrator of the decedent's estate. *See Adamson v. Blackmar*, 546 S.W.2d 698 at 702 (Tex. App. – Austin 1977, no writ) (explaining that in order to have a binding judgment against the estate of a decedent, the representatives of the estate must be sued and served, and judgment rendered against them in their representative capacities rather than suit being purely against the decedent in their own name). Plaintiffs are in complete agreement with this legal precept, and had they been aware of Mr. Lucio's death, would have taken every appropriate step, prior to filing of suit, to have a representative for the estate named and served. The fact that less than 30 days after being made aware of Mr. Lucio's death, Plaintiffs have moved forward with the necessary legal action to have a representative named, should stand as evidence to the Court that Plaintiffs' only desire in this case is for the fair and appropriate administration of justice, and eventually fair compensation for the harms and losses they suffered as a result of Mr. Lucio's negligence.

22.     Surprisingly, only a little more than a year ago, Judge Torteya, writing from his bench in the Brownsville Division for the Southern District of Texas, decided a case that appears highly instructive in the present matter. *Dave v. Laird*, 2022 U.S. Dist. LEXIS 156002 (S.D. Tex. July 28, 2022). In that case, the plaintiff, Dave, filed a pro se complaint alleging violations of his civil rights by a Detective

Jaime Rodriguez, a police officer for the City of South Padre Island who passed away prior to the institution of suit and without ever having been served. *Id.*

23.    Setting out his reasoning in that opinion, Judge Torteya explained that "in Texas, 'a judgment against a party who died before service of process and whose estate has not been made a proper party is void." *Id.* at *5. He went on to state that Detective Rodriguez, lacked the capacity to be sued under Texas law. *See id.* at *5 (citing *Adamson v. Blackmar*, 546 S.W.2d 698, 703 (Tex. Civ. App. – Austin 1977, no writ).

24.    After making those observations on the effect of seeking judgment against a deceased person in Texas, Judge Torteya went on to discuss the possibility of granting additional time to name and serve a party with the legal capacity to represent the estate in that case: "[o]n a related note, this court has no duty to allow Dave additional time to name and serve a party with the legal capacity to represent Detective Rodriguez's estate. Presuming for the sake of argument that Dave's individual capacity claims could be levied against Detective Rodriguez's estate, they still fail to state a plausible claim for relief." *Dave*, 2022 LEXIS 156002, at *6. Judge Torteya then goes on to list each of Dave's causes of action, the evidence bought by Dave to support them, and why they failed to state a "plausible claim for relief." *Id.* at *6-7.

25.    It is precisely this type of considered approach to the likelihood of Plaintiffs establishing their causes of action against Mr. Lucio (by and through the appropriately appointed representative of his estate, after that individual is properly served and has answered in the case) that Plaintiffs move this Court to take in considering the propriety of Plaintiffs seeking to amend their petition in order to obtain a viable judgment against the estate of the person who actually harmed them. Put simply, if the Court looks at the totality of the circumstances here, it should be clear that Plaintiffs have sought from the very beginning, nothing but justice against those whose acts caused them harm.

*2) were Plaintiffs diligent in amending their complaint?*

26.    Plaintiffs filed suit against the man who harmed them and his employer in state court, totally ignorant of the fact that Mr. Lucio had passed away. As soon as they were made aware of his death, Counsel for Plaintiffs began the search for a qualified probate attorney to assist in having an administrator for Mr. Lucio's estate appointed. That action is currently pending in the proper court in the county of Mr. Lucio's residence before his death under Cause No. P.42480. Plaintiffs would urge the Court not to fault them for not knowing of the death of a man who they met only very briefly on one occasion, and in adverse circumstances in the immediate aftermath of a violent car wreck.

27.    If the Court sees fit to grant Plaintiffs leave to amend their petition to include the representative of Mr. Lucio's estate, this Court may rest assured that that individual will be actually named and served within hours of the Probate Court officially appointing them. Plaintiffs' proposed First Amended Complaint is attached hereto as Exhibit A.

*3) will Plaintiffs be significantly injured if the amendment is denied?*

28.     For several reasons, there is a real possibility that Plaintiffs may suffer injury if the Court does not give them leave to amend and name the representative of Mr. Lucio's estate.  First, no discovery has been conducted in this matter, no documents exchanged, no depositions taken, and no theories confirmed.  At this juncture, for all Plaintiffs know, Autozone could have every intention of denying that Mr. Lucio was in the course and scope of his employment at the time of the wreck in question.

29.     Second, as Plaintiffs have already represented to the Court, proceedings have already been set in motion, at great legal cost to Plaintiffs, to institute the necessary probate proceedings and have a dependent administrator for Mr. Lucio's estate appointed.  In addition to those legal costs undertaken only for the sake of having an administrator appointed, should this Court deny Plaintiffs' Motion for Leave to Amend and name that administrator, then Plaintiffs will be forced to seek judgment against that estate in the State Courts, separate and apart from this action, thus creating costly, inefficient and wasteful dueling litigation with the prospect for inapposite outcomes.

30.     Lastly, and admittedly more ethereal, is a fundamental American truism often referred to as getting one's "day in court."  In this case we are not talking about a random safety manager on a drill site, named purely for purposes of destroying diversity, or an ancillary actor in a much larger series of events leading to the harms complained of by Plaintiffs in this case.  Mr. Lucio is the tortfeasor.  He drove his truck hard enough into the back of Plaintiffs' SUV to buckle in not just the rear cargo area, but the rear passenger doors as well.  Here Plaintiffs seek the most basic remedy the American Courts can offer: the result of a jury saying to them, "yes, you're right, that man hurt you and he should pay for it."  Denying Plaintiffs' Motion for Leave to Amend and the associated Motion to Remand would be a denial of the plaintiffs' right to seek justice in the courts in the most basic and fundamental way.

*4) other factors bearing on the equities…*

31.     It is truly rich that among the first documents filed with this Court in this matter is a brief accusing Plaintiffs of "fraudulent/improper" joinder.  The plaintiffs in this matter are two ladies who were driving down the road and got smashed into by a stranger.  As it turned out, that stranger was driving what appeared to be a company truck when he smashed into them.  Plaintiffs sought treatment for their injuries, retained an attorney to help them in this foreign landscape of seeking justice, and suit was filed against the man who ran into them and the company that owned the vehicle he was driving.  They filed that suit in the county where the incident occurred, completely in keeping with the Texas Rules of Civil Procedure. Plaintiffs had no way of knowing of Mr. Lucio's death, and unlike Autozone, have not attempted to use his death for perceived advantage in litigation.

32.     If there is gamesmanship or forum shopping going on in this case, it is on the part of Autozone.  Within hours of filing their Suggestion of Death in the State Court, the Notice of Removal was filed also.  Plaintiffs literally had less than a day to even investigate what the next steps were when it turns out a tortfeasor has died before suit could be filed and service effected, much less sufficient time to institute probate proceedings, have an appropriate representative named, then file suit and serve that representative.  Plaintiffs quite literally never knew anything was amiss before they were being accused of wrongdoing in a federal forum they did not choose. This is not just or equitable.

  c.  **Relation Back of Amendments Cures Mr. Lucio's Current Lack of Capacity**

Here Plaintiffs seek leave of this Court to amend their pleadings to cure a technical deficiency of a named defendant caused by their lack of knowledge of his passing. This is not only allowed under the rules, but specifically outlined within them. Federal Rule of Civil Procedure 15(c)(2). The relation back of such amendments is a long-standing and accepted principle in both Texas and Federal Courts. *Missouri, K. & T.R. Co. v. Wulf*, 226 U.S. 570 (U.S. 1913); *Davis v. Preston*, 118 Tex. 303, 16 S.W.2d 117, 118 (Tex. 1929). Usually, this takes place after the running of the statute of limitations to save the claims of a party who incorrectly pled their status in relation to a decedent they were litigating to recover on behalf of. *Lovato*, 171, S.W.3d at 852. In the instant case, Plaintiffs need no saving from an expired statute of limitations, and indeed will be forced to litigate their claims for compensation resulting from Mr. Lucio's negligence in both state and federal courts should the requested amendment not be allowed. Plaintiffs urge this Court to look at the current situation through the same lens as did the Texas Supreme Court in its holding in *Lovato*: "…Lovato cured the defect in her capacity before the case was dismissed. Under those circumstances, the estate had standing and was ultimately represented by a person with capacity to pursue the claim on its behalf." *Id.* at 853. Plaintiffs are in the process of having Defendant Lucio's capacity deficit cured, and the Court allowing the requested amendment will ensure that the only parties in the suit have both standing and capacity to participate fully. *Id.*

## V.

### Summary

If looked at in its most basic form, the issue before the Court is a simple matter of Plaintiffs mistakenly naming the wrong entity for the defense of a claim against the deceased Mr. Lucio. There was no intent or fraud behind this mistake; rather the simple fact that Plaintiffs and their attorneys had no idea Mr. Lucio had passed away. The requested leave to amend will not only allow Plaintiffs to cure this mistake, it would relate back to the time of the original filing in Starr County, meaning that the "Lucio entity" would never have had any lack of capacity and the case never would have lacked an in-state defendant that destroys complete diversity. The requested leave, in Plaintiffs' humble opinion, easily meets the requirements of the Hensgens factors and is in the best interest of justice and equity.

## VI.

### Prayer

33. Norma Montalvo and Maria Garcia, the named plaintiffs in the above-entitled and numbered cause, humbly pray that the relief requested herein be granted in all respects, that their Motion for Leave to Amend their Origanal Complaint be granted, that upon his/her appointment by the Probate Court of Hidalgo County Plaintiffs have leave to amend their complaint to name as a defendant the representative of the Estate of Edgar A. Lucio, that Plaintiffs' Motion to Remand be granted, this case be remanded back to the 229th District Court of Starr County for further proceedings, and all other or further relief to which these parties may have shown themselves justly or equitably entitled be herein granted.

Respectfully submitted,

By: /s/ David M. Roerig
David M. Roerig
Attorney-in-Charge
Texas Bar No. 24060513
Southern District No. 915786
david@thegreenlawfirm.com
Jorge A. Green
Texas Bar No. 24038023
Southern District No. 34136
jorge@thegreenlawfirm.com
Leticia Garza
Texas Bar No. 24092405
Southern District No. 2526735
lety@thegreenlawfirm.com

**THE GREEN LAW FIRM, P.C.**
34 S. Coria St.
Brownsville, Texas 78520
Telephone: (956) 542-7000
Facsimile: (956) 542-7026

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF CONFERENCE

I certify that I conferred with Defendant's counsel on November 2, 2023, and Defendant's counsel's office stated that they were opposed to this Motion.

By: /s/ David M. Roerig
David M. Roerig

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument has been forwarded to the following counsel of record in accordance with the Fed. R. Civ. P.:

Karl T. Rivas
P. Clark Aspy
**Naman Howell Smith & Lee, PLLC**
10001 Reunion Place, Suite 600
San Antonio, TX 78216
*via e-mail:* krivas@namanhowell.com
*via e-mail:* aspy@namanhowell.com

on this 3rd day of November, 2023.

By /s/ David M. Roerig
DAVID M. ROERIG